1
2
3
4
5
6
7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   AMBER ELISA ERICKSON,                    No.  2:13-cv-1061-EFB

11              Plaintiff,

12        v.                                  ORDER

13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security,
14
               Defendant.
15

16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying her applications for a period of disability and Disability Insurance

19   Benefits ("DIB") and for Supplemental Security Income ("SSI") under Titles II and XVI of the

20   Social Security Act.  The parties' cross-motions for summary judgment are pending.  For the

21   reasons discussed below, plaintiff's motion is denied and defendant's motion is granted.

22   I.     BACKGROUND

23        Plaintiff filed an application for a period of disability and DIB on May 24, 2010, and an

24   application for SSI on April 18, 2012.  Administrative Record ("AR") 163-168, 183-195.  In both

25   applications plaintiff alleged that she had been disabled since January 1, 2008.  *Id*.  Plaintiff's

26   claims were denied initially and upon reconsideration.  *Id.* at 53-59, 61-66.  On August 1, 2012

27   and January 14, 2013, hearings were held before administrative law judge ("ALJ") David Mazzi.

28   *Id.* at 22-46.  Plaintiff was represented by counsel at the hearing, at which she testified.  *Id.*

                                              1

On March 1, 2013, the ALJ issued a decision finding that plaintiff was not disabled under sections 216(i), 223(d), and 1614(a)(3)(A) of the Act.[1]  *Id.* at 8-16.  The ALJ made the following specific findings:

1. The claimant met the insured status requirements of the Social Security Act through September 30, 2010.

2. The claimant has not engaged in substantial gainful activity since January 1, 2008, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: fibromyalgia, chronic fatigue syndrome, migraine headaches with secondary depression and attention deficit hyperactivity disorder (ADHD) (20 CFR 404.1520(c) and 416.920(c)).

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

* * *

4. Claimant does not have an impairment or combination of impairments that meets or medically equals the criteria of any section of the Listing of Impairments at 20 C.F.R., Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).

* * *

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work, as defined in 20 CFR 404.1567(b) and 416.967(b), and is able to sustain simple, repetitive tasks equating to unskilled work.

* * *

6. Claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

* * *

7. Claimant was born on December 30, 1976 and was 31 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. Claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that claimant is "not disabled," whether or not claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from the alleged onset date of November 10, 2006 through the date of this decision.  (20 CFR 404.1520(f) and 416.920(f)).

*Id.* at 13-20.

/////

3

1    Plaintiff's request for Appeals Council review was denied on June 6, 2012, leaving the

2  ALJ's decision as the final decision of the Commissioner.  *Id.* at 1-3.

3  II.    LEGAL STANDARDS

4    The Commissioner's decision that a claimant is not disabled will be upheld if the findings

5  of fact are supported by substantial evidence in the record and the proper legal standards were

6  applied.  *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000);

7  *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

8  180 F.3d 1094, 1097 (9th Cir. 1999).

9    The findings of the Commissioner as to any fact, if supported by substantial evidence, are

10  conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

11  more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th

12  Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

13  conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

14  *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

15    "The ALJ is responsible for determining credibility, resolving conflicts in medical

16  testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

17  2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

18  interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

19  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

20  III.    ANALYSIS

21    Plaintiff argues that the ALJ erred by (1) failing to consider her fibromyalgia, separately

22  or in combination with other impairments, in determining whether plaintiff's condition satisfied

23  the listing of impairments at step three, (2) rejecting various medical opinions without legally

24  sufficient reasons, (3) discrediting her subjective statements, (4) assessing her RFC, and (5)

25  relying on the grids in finding that she was not disabled.  ECF No. 18 at 12-29.

26    A.  The ALJ Did Not Err at Step Three

27    Plaintiff argues that the ALJ erred at the third step by finding that her medical

28  impairments do not meet or equal a listed impairment at 20 C.F.R., Part 404, Subpart P, Appendix

4

1. ECF No. 18 at 12-16.  At step three of the sequential evaluation process, the ALJ determines whether a claimant's impairment or combination of impairments meets or equals the criteria for a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. Where an impairment(s) does so, it is per se disabling.  20 C.F.R. § 416.920(d).  "Once a per se disability is established, the ALJ has no discretion; he must award benefits." *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990). Here, the ALJ addressed the relevant listing for mental impairments and found that the required criteria was not satisfied by plaintiff's condition.  AR 11.  Plaintiff argues that in doing so the ALJ improperly failed to consider her fibromyalgia.  ECF No. 18 at  12-14.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue."  *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004).  "Common symptoms . . . include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Id*. at 89-90.  "The disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id*. at 90.

The Commissioner has published a Social Security Ruling that provides guidance on how to evaluate fibromyalgia disability claims.  SSR 12-2p, 2012 WL 3104869 (July 25, 2012).  The ruling notes that fibromyalgia is not a listed impairment.  *Id*. at *6.  Thus, as the ruling suggests, the issue at step three is whether the effects of the claimant's fibromyalgia, either singularly or in combination with plaintiff's other impairments, is medically equivalent in severity and functional limitations to another similar but listed impairment(s).  *Id*.  Plaintiff takes issue with the ALJ's failure to address SSR 12-2p and to specifically discuss her fibromyalgia at step-three.  She notes that the ALJ found her fibromyalgia to be a severe impairment at step two and argues that he was therefore required to specifically address it at the step-three inquiry.  ECF No. 20 at 5.  Plaintiff, however, does not specifically identify which particular listing she believes her impairments satisfied or how her condition is of medical equivalency.

Plaintiff bears the burden of proof at step three.  *Yuckert*, 482 U.S. at 146 n.5.  At the administrative level, she contended that she did not have an impairment that met or equaled any of the listed impairments.  AR 284 (prehearing brief in which plaintiff stated, "Claimant does not

have an impairment or combination of impairments that meets or medically equals the severity of one of the [listings]."). Nevertheless, plaintiff now contends that that the ALJ was obligated to explain why her fibromyalgia did not equal one of the listed impairments. "The burden is on the party claiming error to demonstrate not only the error, but also that it affected his 'substantial rights,' which is to say, not merely his procedural rights." *Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012). While plaintiff alleges a general error, she does explain how she was prejudice by the ALJ's failure to specifically discuss her fibromyalgia at step-three. Her motion for summary judgment does not identify the particular listing she believes her impairment(s) equal and offers nothing in the way of analysis that purports to compare her condition to that described in the listings. Accordingly, plaintiff has failed to satisfy her burden of showing that the alleged error affected a substantial right.[2]

Furthermore, plaintiff has failed to cite any authority to support her position that the ALJ was required to specifically explain why each severe impairment found at step-two does not meet or medically equal particular listings at step three. Indeed, several cases have indicated that there is no such requirement. *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) ("It is unnecessary to require the Secretary, as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments."). "The regulations merely require the ALJ to undergo a careful review of the claimant's symptoms on the record." *Gardner v. Apfel*, 198 F.3d 253, 253 (9th Cir. 1999); *see also Mandish v. Comm'r of Soc. Sec. Admin.*, 176 F.3d 483, 483 (9th Cir. 1999) ("Because [the ALJ] accurately explained why the evidence was inconsistent with the claimed disability, the ALJ satisfied his duty to discuss why [plaintiff's] impairments, in combination, did not meet or exceed a listed impairment."). As discussed below, the ALJ

/////

---

[2] In her reply, plaintiff argues that "[a] review of the record, from the limited standpoint of a layperson, plausibly suggests Plaintiff's impairments could medically equal Listing 14.06 for undifferentiated and mixed connective tissue disease . . . or Listing 14.09 for inflammatory arthritis." ECF No. 20 at 8. Plaintiff does not address the standards for meeting those listings, nor does she cite to any evidence in the record that would support a finding that she satisfied these listings. Furthermore, plaintiff's choice of words suggests that she does not believe that she satisfied these listings.

1   provided a careful review of the evidence of record in assessing plaintiff's RFC and explained

2   why plaintiff was not disabled.

3        Plaintiff also contends that the ALJ erred at step three by failing to further develop the

4   record concerning the limitations imposed by her ADHD.  ECF No. 18 at 14-15.  Plaintiff claims

5   that her treating physician, Dr. Betat, noted that plaintiff had limitations in her ability to focus and

6   concentrate and that the ALJ therefore was under a duty to further develop the record regarding

7   this impairment.  *Id*. at 14-15.  An ALJ has a duty "to fully and fairly develop the record and to

8   assure the claimant's interests are considered."  *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir.

9   1983).  The duty is present regardless of whether the claimant is represented by counsel.

10  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  The duty to develop the record is

11  "triggered only when there is ambiguous evidence or when the record is inadequate to allow for

12  proper evaluation of the evidence*."  Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001).

13  "Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper

14  evaluation of the evidence, triggers the ALJ's duty to conduct an appropriate inquiry."

15  *Tonapetyan*, 242 F.3d at 1150.  "A specific finding of ambiguity or inadequacy of the record is

16  not necessary to trigger this duty to inquire, where the record establishes ambiguity or

17  inadequacy."  *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

18       Plaintiff cites the treatment notes from Dr. Betat as triggering the ALJ's duty to further

19  develop the record.  Those treatment notes simply state that plaintiff has "some adult attention

20  deficit disorder," AR 423, and that her focus and concentration has improved since she switched

21  medications, *id*. at 427.  There is nothing ambiguous about these treatment records.  Nor do they

22  create an ambiguity in comparison to other records.  Furthermore, they do not render the record

23  inadequate as they are not the only medical records assessing the extent of plaintiff's mental

24  limitations, including her ability to maintain concentration.  Plaintiff underwent a consultative

25  examination on August 23, 2010, which was performed by Dr. Les Kalman.  *Id*. at 525-538.  Dr.

26  Kalman specifically opined that plaintiff has a decreased ability to maintain attention and

27  concentration, but retained the ability to understand and carry out simple instructions.  *Id*. at 527.

28  /////

The ALJ specifically found at step three that plaintiff had moderate impairments in concentration, persistence, or pace, but that this impairment did not interfere with her ability to perform simple, repetitive tasks. *Id*. at 11. The opinion from Dr. Kalman sufficiently supported this finding.

Plaintiff also makes the conclusory argument that the ALJ erred by failing to discuss the side effects of her ADHD medication. Plaintiff, however, cites to no evidence in the record showing that plaintiff had side effects from her medication that affected her ability to work. Dr. Batar's treatment notes indicated that plaintiff's concentration improved when she switched ADHD medications, but did not identify any adverse side effects. Further, in her application for benefits plaintiff did not identify any side effects from her ADHD medication. *Id*. at 258, 267. There is no indication that plaintiff suffered side effects from her ADHD medication that interfered with her ability to work and the ALJ therefore could not have erred in failing to discuss any such side effects.

### B. The ALJ Did Not Error in Weighing the Medical Opinion Evidence

Plaintiff also argues that the ALJ erred in assessing her RFC by failing to properly weigh various medical opinions in the record. ECF No. 18 at 16-23. To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. *Id.* Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1295 (9th Cir. 1996). An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons that are supported by substantial evidence. *Id.* at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (*e.g.*, supported by different independent clinical findings), the ALJ may resolve the conflict. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir.

1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  However, "[w]hen an

examining physician relies on the same clinical findings as a treating physician, but differs only

in his or her conclusions, the conclusions of the examining physician are not 'substantial

evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

### 1. Dr. Chin

Plaintiff argues that the ALJ failed to consider an opinion from Dr. Chin, one of plaintiff's

treating physicians.  ECF No. 18 at 29.  The record contains several treatment notes from Dr.

Chin, dating back to August 11, 2008.  AR 315-410.  These records reflect that Dr. Chin

diagnosed plaintiff with fibromyalgia and chronic pain.  *Id*.  Plaintiff contends that "Dr. Chin's

extensive diagnosis and treatment cover a far greater range of impairments than assessed by" the

ALJ.  ECF No. 16 at 29.  Plaintiff further argues that the ALJ failed "to recognize Dr. Chin in his

opinion as a treating physician."  *Id*.

Conspicuously lacking from plaintiff's argument is any reference to the particular opinion

the ALJ purportedly rejected.  While there are certain medical records indicating that Dr. Chin

treated plaintiff and diagnosed her with fibromyalgia, these records do not contain any opinion

from Dr. Chin regarding plaintiff's functional limitations.  *See* 20 C.F.R. § 404.1527(a)(2)

("Medical opinions are statements from physicians and psychologists or other acceptable medical

sources that reflect judgments about the nature and severity of your impairment(s), including your

symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your

physical or mental restriction."), 20 C.F.R. § 416.927(a)(2) (same).

The ALJ did agree with Dr. Chin's diagnosis of fibromyalgia.  AR 10.  Assuming the ALJ

is wrong, however, that diagnosis alone is insufficient to establish disability.  *See Matthews v.*

*Shalala*, 10 F. 3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient

proof of disability.").  Thus, assuming the existence of a medically diagnosed condition of

fibromyalgia, Dr. Chin did not provide an opinion regarding plaintiff's functional limitations,

there was simply no opinion for the ALJ to reject.

/////

/////

1          2. Dr. David Betat

2        Plaintiff next argues that the ALJ erred in rejecting the opinion of Dr. David Betat, also

3 one of plaintiff's treating physician. ECF No. 18 at 17-20. On August 24, 2010, Dr. Betat

4 completed a fibromyalgia residual functional capacity questionnaire. AR 531-535. In addition to

5 diagnosing plaintiff with fibromyalgia, he found that plaintiff had chronic myfacial pain, bipolar

6 disorder, and ADHD. *Id*. at 531. Plaintiff's symptoms included multiple tender points, chronic

7 fatigue, numbness and tingling, anxiety, and depression. *Id*. It was Dr. Betat's opinion that

8 plaintiff would frequently experience pain and other symptoms severe enough to interfere with

9 attention and concentration even when performing simple work task, and that plaintiff was

10 incapable of performing even low stress jobs. *Id*. at 532. He opined that plaintiff could walk

11 about 1 block without rest or experiencing severe pain; sit for 20 minutes at one time, but less

12 than 2 total hours in an 8-hour workday, stand for 15 minutes at one time, but stand/walk for less

13 than 2 hours in an 8-hour workday; lift and carry 10 pounds occasionally and 20 pounds rarely;

14 and rarely twist, stoop, crouch, and climb stairs, but never claim ladders. *Id*. at 532-534. He

15 further opined that plaintiff would need to shift positions from sitting to standing at will, require

16 3-minute walk breaks throughout the day and 2-3 additional unscheduled breaks throughout the

17 day each lasting 15 minutes, and would miss about four days a month due to her impairments. *Id*.

18 at 533-534.

19        The record also contains opinion from other sources that contradict Dr. Betat's opinion.

20 On October 29, 2010, plaintiff underwent a neurological evaluation, which was conducted by Dr.

21 Fariba Vesali. AR 558-561. Based upon his examination, Dr. Vesali diagnosed plaintiff with

22 body aches and opined that plaintiff's condition would not impose any limitations lasting more

23 than 12 months. *Id*. at 561. On October 4, 2012, Dr. Osborn conducted an orthopedic

24 consultative evaluation and completed a statement regarding plaintiff's work-related activities.

25 *Id*. at 665-676. On examination, he observed no evidence of swelling, effusion, erythema,

26 warmth, or deformity in upper and lower extremities, with all joint ranges of motion within

27 normal limits. *Id*. at 668. Cervical spine showed plaintiff was tender in every area of palpation,

28 with no evidence of muscle spasm or deformity. He noted that plaintiff showed a lack of effort

1   on range of motion during examination of the thoracolumbar spine.  *Id*. at 668.  Dr. Osborn

2   specifically found that plaintiff exaggerated her symptoms during the examination.  *Id*. at 665.

3   He diagnosed plaintiff with thoracolumbar spine pain, cervical spine pain, and bilateral wrist

4   pain, and opined that plaintiff had no limitations in activities.  *Id*. at 670.

5        In October 2012, plaintiff underwent a multidisciplinary treatment evaluation.  Dr. Levin

6   opined that plaintiff "has been inappropriately treated up until this point with high dose opiates

7   and soma, and it is likely that these medications are used not just for treatment of an addiction to

8   opiates, but also for stabilization of psychiatric problems."  *Id*. at 692.  He further stated that "it

9   was unclear why her previous doctors were providing high dose opiates."  *Id*.  Plaintiff

10  complained to a physical therapist that her pain level of 88/100, and she self-rated her functional

11  impairment at 100/100.  *Id*.  However, other than a finding of carpal tunnel syndrome, no specific

12  physical abnormalities were found.  *Id*.

13       In assessing plaintiff's RFC, the ALJ gave limited weight to Dr. Betat's opinion.  The ALJ

14  found that Dr. Betat's opinion was "contradicted by the great weight of the evidence, including

15  Dr. Betat's own treatment records, *e.g.*, ["a little limbago" in December 2012], and the

16  assessments of Board-certified physicians."  AR 13-14.

17       Although Dr. Betat was plaintiff's treating physician, Dr. Vesali and Dr. Osborn each

18  conducted their own examination of plaintiff, and provided an opinion that plaintiff had no

19  limitations based on their independent findings.  These physicians' opinions constituted

20  substantial evidence supporting the ALJ's rejection of Dr. Betat's opinion, as well as the ALJ's

21  RFC finding that plaintiff did not have physical limitations.  *See Tonapetyan*, 242 F.3d at 1149

22  ("the contrary opinions for [examining physicians] serve as additional specific and legitimate

23  reasons for rejection the opinions of [treating physicians] . . . .").  Accordingly, the ALJ did not

24  err in rejecting Dr. Betat's opinion.

25            3.  Dr. Sheehy

26       Plaintiff also argues that the ALJ erred in failing to properly consider the opinion of Dr.

27  Sheehy, a non-examining physician.  On December 3, 2010, Dr. Sheehy completed a Physical

28  Residual Functional Capacity Assessment and opined that plaintiff should avoid even moderate

1    exposure to hazards, such as machinery and heights due to alleged blackouts.  AR 575.  No other

2    limitations were assessed.  *Id*. at 572-576.  Plaintiff contends that the ALJ failed to properly

3    consider Dr. Sheehy's opinion.  The ALJ, however, specifically stated that he considered the

4    opinions from state agency medical examiners, which generally found no functional limitations,

5    and modified their assessments in light of the record as a whole.  *Id*. at 15.  While the ALJ did not

6    explicitly address Dr. Sheehy's opinion that plaintiff should avoid hazards, machinery and

7    heights, the ALJ specifically found that while plaintiff alleges seizures, "there are no clinical

8    findings supporting a seizure disorder or any indication of treatment for a seizure disorder."  *Id*. at

9    10.  Based on the lack of objective evidence, the ALJ found that plaintiff's alleged seizure

10   disorder was not severe.  *Id*.

11        Although the ALJ did not explicitly reject Dr. Sheehy's opinion, it is easily inferred that

12   the opinion was rejected due to a lack of evidence substantiating plaintiff's allegations of a

13   seizure disorder.  *See Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (courts "are not

14   deprived of [their] faculties for drawing specific and legitimate inferences . . . if those inferences

15   are there to be drawn.); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190 (9th Cir. 2004)

16   (ALJ may reject an opinion that is "unsupported by the records as a whole . . . or by objective

17   medical findings.").  Accordingly, the ALJ did not err in rejecting Dr. Sheehy's opinion.

18                4.  <u>Dr. Kalman</u>

19        Plaintiff also contends that ALJ failed to properly consider the opinion of Dr. Les Kalman,

20   an examining physician.  ECF No. 18 at 20-22.

21        Dr. Les Kalman completed a psychiatric evaluation and provided an opinion on plaintiff's

22   mental limitations.  AR 525-528.  Dr. Kalman diagnosed plaintiff with major depression, ADHD,

23   and adjustment disorder depressed secondary to medical condition.  *Id*. at 527.  It was Dr.

24   Kalman's opinion that plaintiff can understand and carry out simple one or two job instructions,

25   but had a decreased ability to relate with supervisors and coworkers, deal with the public,

26   maintain attention and concentration; and withstand stress and pressure associated with daily

27   work activities.  *Id*. at 527.

28   /////

1   The ALJ's decision contained the following discussion concerning Dr. Kalman's opinion:

2
3   > This assessment is not inconsistent not inconsistent with the
    > residual functional capacity for simple, repetitive tasks equating to
    > unskilled work; although the record as a whole does not support a
    > finding of significant social limitations which would preclude the
    > performance of most unskilled jobs, even were such limitations
    > established, they would not preclude performance of jobs existing
    > in significant number in the economy and would not change the
    > ultimate finding of "not disabled."

4
5
6

7   AR 13.

8   Thus, the only portion of Dr. Kalman's opinion that the ALJ rejected was her opinion that

9   plaintiff had a decreased ability to relate with supervisors, coworkers, and to deal with the general

10  public. The court finds, however, that the reason provided for rejecting Dr. Kalman's opinion

11  regarding social limitations was a specific or legitimate basis. The conclusory finding that her

12  opinion regarding social function is not supported by the record as a whole, fails to satisfy the

13  level of specificity required under this circuit's precedent. *Regenniter v. Comm'r of Soc. Sec.*

14  *Admin.*, 166 F.3d 1294, 1299 (9th Cir. 1999); *Embrey v. Bowen*, 849 F.2d 418, 421 (1988).

15  Nevertheless, the failure is harmless because, as indicated by the ALJ and explained in greater

16  detail below, a decreased limitation in social function would not preclude plaintiff from

17  performing unskilled work.

18  Furthermore, the ALJ's finding that plaintiff retains the ability to perform unskilled work

19  is supported by the opinion of Dr. Stephen Fair, a non-examining physician. *Id.* at 550-552. Dr.

20  Fair opined that plaintiff had no limitations in carrying out simple instructions. *Id.* at 550. He

21  further opined that plaintiff would be able to preserve and concentrate on simple, routine work for

22  an extended period of time, and be able to adapt to changes in a simple work environment. *Id.* at

23  552. Dr. Fair's opinion was subsequently affirmed by Dr. Nguyen, a non-examining physician.

24  *Id.* at 602.[3]

25  _____

26  [3] Plaintiff also argues that the ALJ failed to consider Dr. Fair's opinion that plaintiff was
    limited to public contact. ECF No. 18 at 21-22. The ALJ specifically found that this limitation

27  was "not supported but would not alter the ultimate decision of 'not disabled.'" AR 15. As
    explained below, any error in excluding limitations regarding plaintiff's ability to interact with

28  the public was harmless.

1       C.  <u>The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's</u>

2       <u>Credibility</u>

3         Plaintiff next argues that the ALJ's finding that she is not credible is not supported by the

4  record.  ECF No. 18 at 23-27.  First, the ALJ found plaintiff was not credible due to

5  inconsistencies in her statements.  AR 12.  As observed by the ALJ, at the August 1, 2012

6  hearing, plaintiff testified that she has two children, ages 9 and 15, that pretty must do everything

7  around the house.  AR 41.  She also testified that she cannot drive her children to school, and that

8  if they miss the bus, they miss school.  *Id*. at 45.  However, during the October 2012

9  multidisciplinary treatment evaluation, plaintiff reported to a psychologist that she lives with her

10  fiance and six children in a "blended family" (fiancé has four children ages 1, 3, 9, and 11, while

11  plaintiff has two children ages 19 and 16).  Plaintiff also stated that she does not drive much and

12  that her fiancé usually takes the children to school.

13         Plaintiff argues that there is nothing inconsistent between the statements regarding her

14  children helping with house work.  ECF No. 18 at 25.  The court agrees that the ALJ's

15  observations regarding plaintiff's children does not evidence any inconsistency.  However,

16  plaintiff fails to address the ALJ's other observations.  Specifically, that she testified in August

17  2012 that if her kids miss the bus they do not go to school.  AR. 45.  This is contrary to the

18  statements she made two months later that her fiancé usually takes her children to school.  *Id*. at

19  700.  Plaintiff does not address this inconsistency and the ALJ's interpretation of the evidence

20  was reasonable and therefore must be upheld.  *Thomas v. Barnhart*, 287 F.3d 947, (9th Cir. 2002).

21         Plaintiff also argues that her inconsistent statement does not constitute a clear and

22  convincing reason because the ALJ "provides no reason nor logical bridge suggesting how either

23  statement undermines [her] representations concerning pain or pain related symptoms."  ECF No.

24  18 at 25.  The ALJ, however, need not tie his credibility finding to a particular alleged

25  impairment where, as here, the finding demonstrates that plaintiff is generally not trustworthy.

26  *See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (finding that the ALJ properly

27  discounted plaintiff testimony where it was inconsistent "with the medical evidence . . . . Thus the

28  ALJ discounted the [plaintiff's] testimony because he found it to be unbelievable in general.").

14

1    Accordingly, this first reason for rejecting plaintiff's testimony was a clear and convincing basis

2    for discrediting plaintiff's testimony.

3         The ALJ also considered evidence indicating that plaintiff exaggerated her symptoms.

4    AR 13.  The ALJ noted that Dr. Osborn reported that the reliability provided by plaintiff was

5    "poor" because of "exaggeration of symptoms."  *Id.* at 665.  He also observed that at least one

6    physician noted concern regarding "her continued attempts to receive entitlements, and recent

7    MVA with possible injury claim."  *Id.* at 693.  The ALJ properly relied on evidence of

8    exaggeration and motivation to gain monetary benefits in assessing plaintiff's activity.  *See Bell-*

9    *Shier v. Astrue*, 312 F. App'x. 45 49 (9th Cir. 2009) (finding that ALJ properly relied on evidence

10   of exaggeration as well as a doctors observations of a "possible motivation from secondary gain"

11   in discrediting plaintiff's testimony.).

12        Lastly, the ALJ also found that despite plaintiff's extensive treatment history, she has

13   displayed a recent pattern of lack of urgency in seeking treatment.  AR 13.  Specifically, the ALJ

14   observed that during the course of her multidisciplinary treatment evaluation, she missed two

15   appointments and was 20 and 30 minutes late to two other appointments.  *Id.*  As a general rule, a

16   failure to seek treatment for an allegedly debilitating medical problem may be a valid

17   consideration by the ALJ in determining whether the alleged associated pain is not a significant

18   nonexertional impairment.  *See Flaten v. Secretary of HHS*, 44 F.3d 1453, 1464 (9th Cir. 1995).

19   As noted by the ALJ, plaintiff has an extensive treatment history.  The ALJ's reliance on two

20   missed appointments and being tardy to two others as demonstrating an unexplained failure to

21   seek treatment is dubious.  However, given the other reasons provided by the ALJ, the court finds

22   that any reliance on this last reason was harmless.  *Molina v. Astrue*, 674 F.3d 1104, 1115

23   (finding error harmless where "ALJ would have reached the same result absent the error.").

24        Accordingly, the ALJ provided sufficient reasons for discounting plaintiff's subjective

25   complaints.

26   /////

27   /////

28   /////

15

1    D.  <u>ALJ Properly Relied on the Grids in Determining That Plaintiff Was Not Disabled</u>

2        Plaintiff further argues that the ALJ impermissibly relied on the Grids in assessing

3    whether she was disabled.

4        The Grids are tables that present various combinations of factors the ALJ must consider in

5    determining whether other work is available.  *See generally Desrosiers v. Sec'y of Health and*

6    *Human Services*, 846 F.2d 573, 577–78 (9th Cir. 1988).  An ALJ may apply the Grids instead of

7    consulting a vocational expert "only when the grids accurately and completely describe the

8    claimant's abilities and limitations."  *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985); *see*

9    *also Heckler v. Campbell*, 461 U.S. 458, 462 n. 5 (1983).  The Grids are based on exertional

10   levels, distinguishing between the ability to do sedentary, light, medium and heavy work.  If a

11   claimant has nonexertional limitations-that is, limitations on his or her ability to work that do not

12   directly affect his or her strength-the ALJ may only rely on the Grids if the nonexertional

13   limitations are not so significant as to impact the claimant's exertional capabilities.  *See Penny v.*

14   *Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993).  Nonexertional limitations are non-strength related

15   limitations including mental, sensory, postural, manipulative, and environmental limitations.  20

16   C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e).  While it is true that significant non-exertional

17   impairments may make reliance on the Grids inappropriate, "the fact that a non-exertional

18   limitation is alleged does not automatically preclude application of the Grids.  The ALJ should

19   first determine if a claimant's non-exertional limitations significantly limit the range of work

20   permitted by his exertional limitations."  *Tackett v. Apfel*, 180 F.3d 1094, 1101–02 (9th Cir.

21   1999).

22       As far as the court can discern, plaintiff only argues that the ALJ erred in relying on the

23   Grids based on his finding that "even an additional limitation with respect with working with the

24   public would have little effect on the occupational base."  ECF No. 18 at 29.[4]  As explained, the

25   ALJ's RFC limits plaintiff to unskilled work.  "The basic mental demands of competitive,

26

27       [4]  Plaintiff argues in her reply that Dr. Sheehy's opinion regarding exposure to heights,
     hazards, and machinery precludes the use of the grids.  ECF No. 20 at 12.  As explained above,
28   the ALJ properly rejected this argument.

remunerative, unskilled work included the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15, at *4. Furthermore, "[a] substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." *Id.* Significantly, unskilled work "ordinarily involves dealing primarily with objects, rather than with data or people." *Id.*

Further, no medical source assessing plaintiff's mental limitations found that plaintiff was severely impaired in her ability to interact with others. Accordingly, given that plaintiff does maintain the ability to interact with others, even if on a limited basis, there is no significant non-exertional limitations affecting plaintiff's ability to perform unskilled work. Accordingly, the ALJ properly relied on the grids in finding that plaintiff was not disabled. *See Summers v. Comm'r of Soc. Sec.*, 2009 WL 2051633, at 23 ("Because plaintiff is capable of infrequent public and co-worker contact, there is no evidence of significant non-exertional limitations affecting plaintiff's ability to perform work," and thus the ALJ permissibly relied on the grids.).

IV.   <u>CONCLUSION</u>

The ALJ applied the proper legal standard and his decision was supported by substantial evidence. Therefore, it is hereby ORDERED that:

    1.  Plaintiff's motion for summary judgment is denied;

    2.  The Commissioner's cross-motion for summary judgment is granted; and

    3.  The Clerk is directed to enter judgment in the Commissioner's favor.

DATED: September 30, 2014.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE